UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Four S Shell, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PMG, LLC,<br><br>　　　　　Defendant. | Civil Action No.<br>3:16-cv-5701 (PGS) (TJB)<br><br>**MEMORANDUM<br>AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion by Defendant for summary judgment. This Court has federal question jurisdiction, 28 U.S.C. § 1331, under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2802, which regulates a franchisor's termination of a franchise relationship. Plaintiff – having been denied injunctive relief – seeks compensatory damages, consequential damages, and attorney fees and expenses.[1] Because Defendant bears the burden of proof in actions under the PMPA; the bulk of defendant's evidence is testimonial and thus subject to credibility determinations; and there remain disputes as to material facts, the Court finds summary judgment inappropriate with respect to Plaintiff's PMPA claim. However, Plaintiff's state law claims are preempted and therefore are dismissed.

---

[1] In addition, a demand for a permanent injunction technically remains in the complaint. It is, however, unclear how such an injunction can reasonably be enforced given that the franchise agreement has long since been terminated. Therefore, if Plaintiff is entitled to relief, it is likely that only monetary damages would be appropriate.

**I.**

Plaintiff, Four S Shell, LLC, is a New Jersey limited liability company, that formerly operated a motor fuel service station (the "station") located on Route 1 South in North Brunswick, New Jersey (the "Property"). (Defendant's Statement of Undisputed Material Facts ("DSUMF"), ECF No 48-1 at ¶¶ 1, 2). Shilpa Sathu is its owner and principal. (Declaration of Bruce Rosen ("Rosen Decl."), Ex. 6, Deposition of Shilpa Sathu ("Sathu Dep.") at 13:3 to 11). Defendant PMG is a Virginia limited liability company with its principal offices in Woodbridge, Virginia. (DSUMF at ¶ 3). Defendant PMG is in the business of, inter alia, distributing branded motor fuels (including Shell branded fuels) to fuel service stations for retail sale. (DSUMF at ¶ 4).[2] Some of the stations to which PMG distributes branded fuels are operated as franchises, with PMG serving as the franchisor and a station operator serving as the franchisee. (*Id.*; *see* Rosen Decl., Ex. 13, Deposition of James Deakin at 7:22 to 8:10).

PMG owns or leases approximately 60 to 80 fuel stations in New Jersey. (DSUMF at ¶ 5; Rosen Decl., Ex. 1, October 24, 2016 Transcript ("October 24 Transcript") at 10:14 to 19). There are also more than a hundred other stations in New Jersey to which PMG supplies fuel but does not own or lease. (*Id.*). Overall, PMG conducts business at sites from Delaware to Maine. (DSUMF at ¶ 5; Deakin Dep. at 7:11 to 12). The majority of the stations owned or leased by PMG in New Jersey are operated by franchisees. (DSUMF at ¶ 6; Plaintiff's Counter Statement of Undisputed Material Facts ("PCSUMF") at ¶ 6). Approximately only 20 to 25 stations in New Jersey are operated by a commission agent. (October 24 Transcript at 11:11-11:13). Here, PMG is the owner

---

[2] Plaintiff avers that the allegations of this paragraph are not compliant with R. 56.1(a) as they do not cite to the record in support thereof. (Plaintiff's Response ¶4). However, Plaintiff raises no substantive objection and asserted this fact in its complaint. (Complaint, ECF No. 1 at ¶ 9).

of the property. (DSUMF at ¶ 7). Plaintiff leases the property from PMG and operates the station as PMG's franchisee pursuant to the franchise agreement between them. (*Id.*).

## II.

Plaintiff filed its Verified Complaint on September 19, 2016, (ECF No. 1), and an accompanying Ex Parte Order to Show Cause, (ECF No. 4). The same day the Verified Complaint was filed, the Court entered an order scheduling a preliminary injunction hearing. (ECF No. 7).

The parties appeared before this Court on September 29, 2016. In addition to argument, the Court heard testimony from Sathu and Kamalpreet Singh (Plaintiff's employee). (ECF No. 16). After the hearing, the Court entered an Order: (1) granting temporary restraints maintaining the status quo; (2) enjoining termination of the franchise agreement between Plaintiff and PMG at least until October 24, 2016; and (3) scheduling a second hearing for October 24, 2016. (ECF Doc. No. 15).

The parties returned to Court for a second hearing before Judge Sheridan on October 24, 2016. The Court heard testimony from Deakin and McGee. At the conclusion of the hearing, the Court concluded there was "really no dispute, but that PMG has acted in good faith and has complied with the requirements of the statute." (*Id.* at 152:13-15 (emphasis added)). It is Plaintiff's position that the observations as set forth in this Transcript were made without the benefit of full discovery and are no longer supported. (*See* PSOF at ¶ 19).

Plaintiff alleges that the rent amounts included in the renewal terms were excessively high and that PMG proposed the changed rent amounts in bad faith as part of an effort to retake possession of the station. (*Id.* at ¶ 99). PMG maintains that: (1) the rent amounts included in the proposed renewal terms were not excessively high and instead simply reflect actual market value; (2) the rent amounts were determined according to the same rent calculation process that PMG

3

employs while setting renewal terms for all of its properties; (3) the rent amounts provided in the expiring franchise agreement were set artificially low in response to severe mismanagement of the station and damage to its value by a previous franchisee; and (4) that PMG specifically advised Plaintiff before it assumed the franchise agreement that the rent at that time was artificially low and would be increased substantially at the expiration of the franchise term.

## III.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in [her] favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657

(3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in [her] favor" that no reasonable jury could find for [her], summary judgment is appropriate. *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir. 2007).

"The [PMPA] limits the circumstances in which franchisors may 'terminate' a service-station franchise or 'fail to renew' a franchise relationship." *Mac's Shell Service v. Shell Oil Products Co.*, 559 U.S. 175, 177 (2010). "[A] franchisee may bring suit in federal court against any franchisor that fails to comply with the [PMPA's] restrictions on terminations and nonrenewals. Successful franchisees can benefit from a wide range of remedies, including compensatory damages, reasonable attorney's fees and expert costs, and equitable relief." *Mac's Shell Service*, 559 U.S. at 179 (citing 15 U.S.C. § 2805).

The PMPA "authorizes franchisors to decline to renew a franchise relationship if the franchisee refuses to accept changes or additions that are proposed 'in good faith and in the normal course of business' and that are not designed to convert the service station to direct operation by the franchisor." *Mac's Shell Service*, 559 U.S. at 192 (quoting 15 U.S.C. § 2802(b)(3)(A)). "The test is whether the 'franchisor had acted in subjective good faith in requesting the changes, and not whether the demanded changes were the result of reasonable business judgments.'" *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 19 (1st Cir. 2006) (citation omitted). The test "provide[s] adequate protection of franchisees from arbitrary or discriminatory termination or nonrenewal, yet avoid[s] judicial scrutiny of the business judgment itself. Thus, it is not necessary for the courts to

determine whether a particular marketing strategy is a wise business decision." *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1222-23 (7th Cir. 1982) (citation omitted). "[T]he 'good faith requirement requires merely that a franchisor not act with evil motive or discriminate selectively against franchisees.'" *Id.* (citation omitted).

The Court shall deny summary judgment here because of the following disputes of material fact:

(1) The existence of a formula for calculating increases in rent at Defendant's franchises. (*See* DSUMF at ¶ 93; PCSUMF at ¶¶ 93, 95-97). Although Defendant contends such a policy exists, it cites oral deposition, in-court testimony, or affidavits, uncorroborated by any written policy. (*See, e.g.*, DSUMF at ¶ 102-103; October 24 Transcript at 60:13-25; 61:12-25; Deakin Dep. at 41:17-42:16). Defendant has admitted that it did not have a *written* policy or formula for evaluating rental values until recently. (*See* PSUMF at ¶¶ 8-9; Defendant's Counter Statement of Material Facts (DCSUMF) at ¶¶ 8-9). While the Court declines to accept Plaintiff's rigid position that Defendant must have a mathematical formula, the absence of a written policy indicates, as Defendant has admitted, that Deakin alone considers the factors and makes an ultimate determination. Thus the enforcement of the policy rests in Deakin's credibility and Plaintiff is entitled to cross-examine him before a trier of fact about this purported policy.

(2) Whether Deakin and McGee warned Plaintiff that rental values would increase when they initially met. (*See* October 24 Transcript at 26:17-27:13, 104:15-21; Sathu Decl. at ¶¶ 3-4).

6

(3) Whether Deakin and McGee suggested, during that initial meeting, that Plaintiff could operate a truck stop at the property. (*See* Sathu Decl. at ¶ 5; PSOF ¶¶ 27-33; PCSUMF at ¶ 69).

(4) Whether Defendant failed to provide her with training; whether Plaintiff's need for training was apparent; and whether Defendant had a training program that was available. (Sathu Decl. at ¶ 2; DLSA at ¶ 13; DSUMF at ¶ 30; PCSUMF at ¶ 32).

(5) Whether Defendant placed Plaintiff's account on COD status in retaliation for her request to operate the station as a commission. (*See* PSOF at ¶ 41; PCSUMF at ¶ 163, 224; Goldman Decl., Ex. 31, September 13, 2016 email exchange between Plaintiff, McGee, and Deakin).

(6) Whether Defendant had a motive not to renew the agreement, as shown by the strained relationship between Sathu, Deakin, and McGee. (*See, e.g.*, DSUMF at ¶ 143; October 24 Transcript at 37:9-38:15, 106:4-23; Rosen Decl., Ex. 11, August 25, 2015 email exchange). Plaintiff also notes that Defendant received an offer from Tim Horton's to open a franchise at the location. (*See* October 24 Transcript at 55:20-22). The fact that the Tim Horton's deal fell through and the property remained vacant for some time is not conclusive evidence that defendant negotiated in good faith.

The Court also notes the substantial increase in rent, which is not conclusive of bad faith on the part of Defendant but is nonetheless relevant. *See Esso Standard Oil Co. v. Dept. of Consumer Affairs*, 793 F.2d 431 (1st Cir. 1986).

Moreover, the Court notes that Defendants bear the burden of proof here. *See Carter v. Exxon Co. USA*, 177 F.3d 197, 202 (3d Cir. 1999). This further bolsters the Court's decision that summary judgment is inappropriate on this count.

## Plaintiff's State Law Claims

In addition to the claims set forth under the PMPA, Plaintiff sets forth several state law claims: breach of contract and breach of good faith and fair dealing (Count II); breach of the covenants of good faith and fair dealing (Count III); fraudulent inducement to enter into contract (Count IV); violation of the New Jersey Franchise Practices Act, N.J. Stat. Ann. § 56:10-5 (Count V); tortious interference with present and prospective economic advantage (Count VI); conversion (Count VII); and unjust enrichment (Count VIII). (*See* Complaint at ¶¶ 101-125).

The PMPA creates "a uniform national system of petroleum franchise terminations." *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 588 (3d Cir. 1989). Accordingly, the act explicitly provides, with respect to termination of a franchise relationship:

> [N]o state may adopt, enforce, or continue in effect any provision of any law or regulation . . . with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1). As such, "when state law claims are 'intimately intertwined' with the termination or nonrenewal of a franchise they are preempted by the PMPA." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299 (3d Cir. 2008).

In this case, Plaintiff's contract claims are inextricably intertwined with the termination or nonrenewal of Plaintiff's franchise relationship. Moreover, Plaintiff has not set forth any opposition to Defendant's preemption argument and thus waives same. Therefore, the Court shall grant summary judgment with respect to Plaintiff's state law contract claims.

## **ORDER**

This matter comes before the Court on a motion filed by Defendant for summary judgment. The Court held oral argument on December 17, 2018. The Court has considered the written

submissions of the parties and the oral arguments set forth on the record. Accordingly, for the reasons stated herein and for good cause shown;

IT IS on this 10 day of July, 2019,

ORDERED that Defendant's motion for summary judgment (ECF No. 47) is granted in part and denied in part as follows:

(a) Defendant's motion for summary judgment on Count I – bought under the PMPA – is denied;

(b) Defendant's motion for summary judgment on the remaining counts – brought under state law – is granted.

_____
PETER G. SHERIDAN, U.S.D.J.