UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FOUR S SHELL LIMITED LIABILITY COMPANY,<br>*Plaintiff*,<br><br>v.<br><br>PMG LIMITED LIABILITY COMPANY,<br>*Defendant*. | Civil Action No.: 16-cv-5701 (PGS)(TJB)<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is Plaintiff Four S Shell Limited Liability Company's ("Four S Shell" or "Plaintiff") Motion for Attorneys' Fees and Costs (ECF No. 106), and Defendant PMG Limited Liability Company's ("PMG" or "Defendant") Cross-Motion for Reconsideration (ECF No. 108). The Court heard oral argument on January 6, 2021. For the reasons explained below, Defendant's cross-motion for reconsideration is granted in part and denied in part; and the motion to award Four S Shell attorneys' fees and costs is granted, subject to certain deductions, in the total amount of $100,276.93.

**B**ACKGROUND

Plaintiff Four S Shell and Defendant PMG entered into a franchise agreement under which Plaintiff operated a fuel service station and convenience store on Defendant's property ("Station 9538"). In 2016, Plaintiff sued Defendant for (1) failure to renew and/or termination of a franchise agreement in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, *et seq.*; (2) breach of contract; (3) breach of the covenants of good faith and fair dealing; (4) fraudulent inducement to enter contract; (5) terminating or failure to renew a franchise without good cause in violation of the New Jersey Franchise Practices Act, N.J. Stat.

1

56:10-5, -10; (6) tortious interference with present and prospective economic advantage; (7) conversion, and (8) unjust enrichment. (Compl. 1-32, ECF No. 1).

When the suit was initially filed, Plaintiff brought an Order to Show Cause why a preliminary injunction should not issue due to the bad faith termination of the franchise agreement. The Court denied the application after a hearing, finding that there were questions of fact. (ECF No. 18). For several years, the case proceeded through discovery and on July 10, 2019, summary judgment was granted to Defendant on all but one of Plaintiff's claims. (Memo & Order, ECF No. 67). Count 1 – Plaintiff's PMPA claim – proceeded to trial. (*See id.*).

A three-day bench trial took place in March 2020. (See ECF Nos. 90-92). The primary question before the Court was whether Defendant's attempt to increase Plaintiff's rent for Four S Shell's station (Station 9538) by 83% in order to renew their franchise agreement was a bad faith effort to terminate or non-renew the franchise. (Memo 2-3, ECF No. 103). The Court ruled that it was.[1] (*Id.* at 28). On September 14, 2020, a Memorandum and Judgment was entered in favor of Four S Shell. (ECF Nos. 103, 104).

With regard to damages, Plaintiff primarily sought return of its investment to purchase Station 9538 in the amount of $130,000, plus there was testimony about the return of a $43,287.36 deposit withheld by Defendant and reimbursement for the installation of bulletproof glass at Station 9538 costing about $3,600.00. (ECF No. 103 at 28; *see also* Amended Final Pretrial Order 18, ECF No. 87). As the Court explained, return of investment was not the correct measure of damages, so it was not awarded (*id.* at 30); but the other damages were awarded (*id.* at 28).

---

[1] The outcome was somewhat unexpected because the testimony at the injunction hearing and the trial were similar in that the same witnesses testified at the hearing and trial. However, at trial Plaintiff more competently emphasized how the exhibits supporting PMG's appraisal of Station 9538 were flawed and arbitrary.

Counsel for Four S Shell submitted a written request for attorneys' fees in October 2020. (ECF No. 106). It requested a total of $123,669.46 in legal fees, plus court reporting fees of $397.44. (*Id.*). It claims that all legal fees should be awarded even though Plaintiff did not obtain a favorable verdict on all its claims. (*Id.*).

On November 20, 2020, Defendant filed an opposition to Plaintiff's motion for attorneys' fees and a cross-motion for reconsideration of the September 14, 2020 Judgment pursuant to either Rule 60(b)(6) or the Court's inherent powers. (Opp. Br. & Cross-Mot. Reconsideration 3, ECF No. 108). It asserts that the requested attorneys' fees are excessive and unreasonable because (1) Plaintiff prevailed on only one of its original eight claims and was awarded approximately one quarter of the damages sought; and (2) the requested fees, if awarded, would quadruple Plaintiff's total recovery. (Opp. Br. at 1, 19-25). In addition, Defendant identifies numerous itemized charges on counsel's invoice that it claims are duplicative, irrelevant, or unreasonable. (*Id.* at 13-18). Moreover, it argues that the Court's judgment should be reconsidered and/or vacated as to (1) the return of Plaintiff's deposit, because it was not part of any cause of action; and (2) damages for the bulletproof glass, because that was an optional, everyday business expense. In sum, Defendant asks the Court to reduce by at least 73.53 percent the amount of fees requested by Plaintiff's counsel – or more, if the Court grants its cross-motion for reconsideration and reduces Plaintiff's damages. (*Id.* at 25).

Plaintiff concedes that duplicate costs should be deducted from the fee award, in the amounts of $3,375.00 and $1,884.97. (Reply Br. 11, ECF No. 112). However, it rejects Defendant's other arguments. (*Id.* at 11-13).

The Court will first address Defendant's motion for reconsideration, followed by Plaintiff's motion for attorneys' fees.

## MOTION FOR RECONSIDERATION

### A. LEGAL STANDARD

The grounds for a court to grant a motion for reconsideration are: (1) an intervening change in the law, (2) newly discovered evidence, or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Heine v. Bureau Chief Div. of Fire & Safety*, 765 F. App'x 816 (3d Cir. 2019) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Courts have held that reconsideration is an extraordinary remedy that should be granted sparingly. *See, e.g.*, *In re Hlywiak*, 573 F. Supp. 2d 871 (D.N.J. 2008). Reconsideration is not appropriate where the moving party raises an issue for the first time, *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001), or simply disagrees with the court's initial decision, *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988); *accord Johnson v. Berryhill*, No. CV 17-2490 (JMV), 2019 WL 78786 (D.N.J. Jan. 2, 2019). The moving party must serve and file a motion for reconsideration within fourteen days after the entry of the order or judgment, and must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate has overlooked." L. Civ. R. 7.1(i).

Under Rule 60(b) of the Federal Rules of Civil Procedure, a court may relieve a party from a final judgment, order, or proceeding for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6). A party must make such a motion within a reasonable time. Fed. R. Civ. P. 60(c)(1). "Apart from Rule 60(b), the District Court has the inherent power to reconsider prior interlocutory orders," as long as it retains jurisdiction over the case. *State Nat'l Ins. Co. v. County of Camden*, 824 F.3d 399, 406 (3d Cir. 2016).

### B. DISCUSSION AND ANALYSIS

Defendant argues that reconsideration of this Court's September 2020 Judgement is appropriate under either Rule 60(6)(b) or the Court's inherent power to reconsider prior orders at any time. (Opp. Br. at 2-3). Specifically, Defendant argues this Court should not have awarded Plaintiff the withheld deposit funds ($43,287.36) or the funds for the bulletproof glass ($3,600). Overall, Defendant believes Plaintiff should recover only nominal damages. (*Id.* at 13).

The Court retains jurisdiction over this case and may reconsider a prior interlocutory order when appropriate. *See Camden*, 824 F.3d at 406. Plaintiff argues that Defendant's motion is untimely but, Defendant has zealously and professionally presented the defense without any undue delay, and as such, the Court will determine whether Defendant has met the criteria for reconsideration on each of its claims below.

#### i. WITHHELD DEPOSIT FUNDS

Defendant first asks this Court to reconsider awarding Plaintiff the withheld deposit funds ($43,287.36), because Judge Bongiovanni determined those funds formed a separate cause of action not pled in the complaint. It claims it was unfairly prejudiced when this Court "*sua sponte* . . . allow[ed] this issue back into the case without notice (and, in fact, directly contrary to the prior decision of the Magistrate Judge)." (*Id.* at 8-9). It notes that Plaintiff did not appeal Judge Bongiovanni's decision and, if Defendant knew the issue would be redetermined by this Court, it would have moved those funds into escrow, deposited them with the Court, or released them to mitigate its exposure. (*Id.* at 8).

Upon review, the Court finds that Defendant has not presented any new evidence, there has been no change in controlling law, and the Court did not make a clear error or overlook factual or legal issues in rendering its decision about the withheld deposit funds. While Judge

5

Bongiovanni ruled that those funds were not part of any cause of action pled in Plaintiff's complaint, she determined that they could be decided as damages.[2] Because Plaintiff obtained a favorable judgment and asserted a valid basis for damages, it was appropriate for the Court to rule that the withheld deposit funds comprised a portion of those damages.

Further, as argued by Plaintiff, there was no unfair surprise when the Court decided this issue because it was raised in the parties' briefs and at trial. In particular, the amended final pretrial order entered on February 18, 2020 stated that Plaintiff intended to prove as damages:

> all monies currently being held by the defendant, the last known amount of which is $43,287.36, which allegedly were monies held in deposit for the benefit of the plaintiff. A motion was filed previously for a return of these monies but the motion was denied. Other than claiming that this amount may be owed if there is an award of counsel fees, there is no reason why this money is being held.

(ECF No. 87 at 18). Thus, Defendants had notice that the deposit funds were a contested issue that would be raised at trial and adjudicated by this Court.[3]

In short, Defendant does not satisfy the criteria for reconsideration on the issue of the withheld deposit funds, and the Court declines to reduce Plaintiff's award by $43,287.36.

---

[2] In her May 2017 order, Judge Bongiovanni concluded that "[w]hether Defendant has improperly withheld funds due to Plaintiff is a separate cause of action not pled in the Complaint. To the extent that Plaintiff has a valid basis for damages, that can be decided as part of the damages portion of the complaint." (Letter Order 3, ECF No. 37).

[3] During the hearing on this motion on January 6, 2021, Defendant argued that the parties stipulated it would continue to hold the deposit until the litigation concluded, explaining that it believed Plaintiff was insolvent and would be unable to pay defense counsel's fees if Defendant prevailed. (*See* Amended Final Pretrial Order ¶¶ 141-43, ECF No. 87). The parties stipulated that "PMG advised Plaintiff that PMG was retaining the funds until the conclusion of litigation . . . by letter dated November 16, 2016." (*Id.*). By acknowledging that Defendant unilaterally decided it was retaining those funds, Plaintiff did not consent to the ongoing retention of those funds or waive its right to seek their return. At oral argument, Plaintiff noted that Defendant has yet to return the withheld deposit.

### ii.  BULLETPROOF GLASS

Defendant also challenges Plaintiff's award for the installation of bulletproof glass because that was an everyday business expense that Plaintiff chose to leave behind when it vacated the premises.[4] (*Id.* at 10-11).  It argues that the funds for the glass were expended before the franchise termination and had nothing to do with Defendant's alleged violation or bad faith. (*Id.* at 12).  Further, Defendant claims "[t]his purported subset of damages was not even mentioned in the Pretrial Order and should have been excluded on that basis alone." (*Id.* at 11). Even if these damages were recoverable, Defendant argues that "Plaintiff failed to present any evidence other than Sathu's conclusory declaration that the replacement of the glass in the convenience store was 'about $3,500.'" (*Id.* at 11).  Further, it claims counsel's use of the higher estimate of $3,600 in its closing statement, without any citation to the record, should not have been sufficient for the Court to increase the award by $100. (*Id.* at 12).

Defendant has not met the criteria for reconsideration on the Court's decision to award damages for the bulletproof glass.  As the Court previously determined, this expense was more like a fixture than a typical maintenance or everyday business cost, and Defendant has not presented evidence or legal authority that warrants reversal of that decision.  However, Defendant correctly asserts that Plaintiff did not submit evidence documenting the precise cost of the glass.  Because Defendant submits that the lower of Plaintiff's two estimates may be appropriate, and Plaintiff did not counter that argument in its reply brief, the Court will reconsider its decision to award Plaintiff $3,600 for the bulletproof glass.  Accordingly, Plaintiff's total recovery for that expense shall be reduced to $3,500.

---

[4] It seems farfetched that glass installed in the convenience store could be removed and used elsewhere.

7

For the foregoing reasons, Defendant's cross-motion for reconsideration is granted in part and denied in part.

## MOTION FOR ATTORNEYS' FEES

### A. LEGAL STANDARD

The PMPA permits a prevailing franchisee to "benefit from a wide range of remedies, including compensatory and punitive damages, reasonable attorney's fees and expert costs, and equitable relief." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, 559 U.S. 175, 179 (2010) (citing 15 U.S.C.§ 2805(b), (d)).  Fee-shifting statutes like the PMPA are an exception to the "American Rule" that requires each party to pay its own legal fees. *Windall*, 51 F.3d at 1184. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

When a fee-shifting statute applies, two criteria must be met in order for one party to recover attorneys' fees from the other: "First, the party seeking fees must be a prevailing party in the litigation, and second, the fees to be awarded must be 'reasonable.'" *Windall*, 51 F.3d at 1184-85 (quoting *Hensley*, 461 U.S. at 433).  A reasonable fee award is one which is "adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." *Id.* at 1185 (alteration in original) (quoting *Student Pub. Interest Research Grp. of N.J., Inc. v. AT & T Bell Laby's.*, 842 F.2d 1436, 1448 (3d Cir. 1988)).

> There are two basic methods for evaluating the reasonableness of an attorneys' fees award—the lodestar method and the percentage-of-recovery method . . . Courts generally regard the lodestar method, which uses the number of reasonable hours times a reasonable rate, as the appropriate starting point for statutory fee shifting cases.

*Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 323 (D.N.J. 1997). After determining the lodestar, the district court's "discretion comes into play and it can adjust the fee

8

for a variety of reasons. The most important factor in exercising this discretion is the 'results obtained' by the plaintiff." *Windall*, 51 F.3d at 1185. *See also Hensley*, 461 U.S. at 439-40.

The Third Circuit has held that even if a party prevails on some claims but not others, the claims and arguments presented may be "linked sufficiently that work performed on one would likely have had value for the others." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x 93, 98 (3d Cir. 2006). In *Tenafly*, the Court found that even though the plaintiffs did not prevail on their Fair Housing Act claim, it was based on the same discriminatory conduct that violated the Free Exercise Clause. *Id.* Therefore, the plaintiffs' "arguments 'cannot be viewed as a series of discrete claims,' but are instead merely 'alternative legal grounds for [the] desired outcome.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). Further, the Court stated that "when a party's claims are connected such that it would be 'difficult to divide the hours expended on a claim-by-claim basis,' it is appropriate to award compensation for work on all claims rather than only those claims that were successful." *Id.* at 101 (citing *Hensley*, 461 U.S. at 435).

In short, when a prevailing party's successful and unsuccessful claims are distinct, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440. *See also Rode v. Dellarciprete*, 892 F.2d 1177, 1185-86 (3d Cir. 1990). If the prevailing party's claims are interrelated, its fees should not be reduced "simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440. "But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the

9

relationship between the amount of the fee awarded and the results obtained." *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1184 (3d Cir. 1995).

Other reasons a court may reduce a fee award include inadequate or vague documentation and billed "hours that are excessive, redundant, or otherwise unnecessary." *See id.* at 433-34; *see also Tenafly*, 195 F. App'x 93 at 102. "The party seeking adjustment has the burden of proving that an adjustment is necessary." *Rode*, 892 F.2d at 1183.

### B. DISCUSSION AND ANALYSIS

Here, it is undisputed that Plaintiff was the prevailing party in the Court's September 14, 2020 Judgment. The parties dispute (1) whether Plaintiff's requested fees were reasonably incurred, and (2) whether Plaintiff should recover its requested attorneys' fees in full despite its limited success. Regarding the first question, the parties agree that a total of $5,259.97 should be excluded from Plaintiff's fees due to duplicate billing entries. The remaining "reasonableness" matters to be determined are whether Plaintiff should recover fees related to (a) discovery of other fuel stations, (b) Defendant's motion to strike Plaintiff's jury demand, and (c) the work performed on the preliminary injunction. Each issue will be discussed below.

#### i. DISCOVERY OF OTHER GAS STATIONS

Defendant argues that Plaintiff should not be awarded fees for its "wide-ranging discovery regarding the rents and appraised values for other franchised stations" because it "ultimately abandoned the issue" and "never introduced any of the documents into evidence at trial." (Opp. Br. at 15-16). Plaintiff's billed hours for that discovery work total $5,760. (*Id.* at 17).

While Plaintiff's discovery of the fair market value of other fuel stations was relevant to its ultimately successful claim that PMG's valuation of Station 9538 was arbitrary and

10

unreasonable, it never presented that evidence. Instead, the Court reached its conclusion based on the evidence presented at trial regarding PMG's valuation of Station 9538. Therefore, because a substantial amount of work was performed on discovery that was never presented, the Court will reduce counsel's award by $5,760.

### ii. MOTION TO STRIKE JURY DEMAND

Defendant asserts that Plaintiff should not be awarded fees for its work in connection with PMG's motion to strike Plaintiff's jury demand. It argues that because the franchise agreement contained a jury waiver, Plaintiff should have withdrawn its jury demand in the first place. (Opp. Br. at 18). Because it refused to do so, Defendant had no choice but to file a formal motion, which Plaintiff did not oppose. (*Id.*). Defendant argues that "Plaintiff cannot be allowed to unreasonably force PMG to file a motion and then also seek to recover the fees it incurred as a result." (*Id.* at 18-19). In short, Defendant asks this Court to reduce Plaintiff's award by $240 – the amount of money Plaintiff billed for its work on this issue. (*Id.*).

According to Plaintiff, Defendant raised the jury waiver issue for the first time during the motion for summary judgment – after more than two years of litigation. (Reply Br. at 12). Plaintiff argues that Defendant waived the jury demand issue by waiting so long to raise it, and that had it been raised sooner, Plaintiff would not have had to expend resources litigating the issue. (*Id.*).

The Court finds that Plaintiff's attorney's fees of $240 is reasonable under the circumstances. A motion to grant or deny a jury demand is routine during the course of litigation, even if the parties' contract addresses the issue. Here, the number of attorneys assigned to this matter and the number of hours billed is fair and reasonable. For the foregoing reasons, the Court declines to reduce Plaintiff's award by $240.

### iii. REDUCTION FOR LIMITED RECOVERY

Defendant asks this Court to significantly reduce Plaintiff's award – by at least 73 percent – because it achieved only limited success on its original claims. However, Defendant has not met its burden to demonstrate that a reduction in fees based on Plaintiff's limited success is warranted.

Under *Hensley*, a district court must "consider[] the relationship between the amount of the fee awarded and the results obtained." 461 U.S. at 437. Plaintiff prevailed on its only claim at trial, which was one of eight claims asserted in its complaint. The factual basis of all those claims was the same: Plaintiff argued that Defendant, in bad faith, proposed an unreasonable rent increase in an effort to terminate Plaintiff's franchise, causing a breach of the parties' contract. While Plaintiff's complaint asserted various legal theories, they were interrelated such that it would be "difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Further, the *Hensley* Court stated that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440.

Here, the same evidence, witnesses, and legal work was necessary to support all of Plaintiff's claims, even though only one was successful. Like the plaintiff in *Tenafly*, Plaintiff's "arguments 'cannot be viewed as a series of discrete claims,' but are instead merely 'alternative legal grounds for [the] desired outcome.'" 195 F. App'x at 98 (quoting *Hensley*, 461 U.S. at 435). As a result, the Court declines to reduce Plaintiff's attorneys' fees in proportion to its successful claims.

However, the Court will deduct from counsel's fees the costs incurred for work on the preliminary injunction, which was denied. (ECF Nos. 4, 7, 18). That work was billed by an earlier retained firm that was not successful, in the amount of $12,670.[5]

### CONCLUSION

Overall, the Court grants Plaintiff's motion for attorneys' fees in the amount of $99,879.49. That figure represents Plaintiff's original request of $123,669.46 minus $5,259.97 in duplicate fees, $100.00 from the bulletproof glass award, $5,760.00 for discovery on other fuel stations, and $12,670.00 in work performed on the preliminary injunction. In addition, the Court awards Plaintiff $397.44 for court reporting expenses, which was not contested by Defendant. As such, Plaintiff's total award for legal fees and costs is $100,276.93.

### ORDER

THIS MATTER having been brought before the Court by Plaintiff's Motion for Attorney's Fees (ECF No. 106) and Defendant's Cross-Motion for Reconsideration (ECF No. 108) and the Court having considered the moving papers, opposition thereto, and reply; for the reasons stated above, and for good cause shown;

IT IS on this 22nd day of January 2021,

**ORDERED** that Plaintiff's motion for attorney's fees is **GRANTED** in part and **DENIED** in part as follows:

Evan L. Goldman sought attorneys' fees in the amount of $123,669.46. The Court will deduct $5,259.97 in duplicate fees, $100.00 from the bulletproof glass damages, $5,760.00 for the discovery performed on other fuel stations, and $12,670.00 for the preliminary injunction, for a total of $99,879.49; and it is further

---

[5] See page 2 concerning the preliminary injunction hearing and the trial.

**ORDERED** that Defendant's cross-motion for reconsideration is **GRANTED** in part and **DENIED** in part as follows:

Reconsideration is **GRANTED** as to the amount of damages for the bulletproof glass; and

Reconsideration is **DENIED** as to the award of withheld deposit funds; and it is further

**ORDERED** that Plaintiff's total award, including legal fees and costs, is **$100,276.93.**

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.